UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Matthew Nagel,** individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**United Food and Commercial Workers Union, Local 653,**<br><br>　　　　　　Defendant. | Civ. No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

By and through the undersigned counsel, Plaintiff Matthew Nagel, individually and on behalf of all others similarly situated, files this class action complaint against defendant United Food and Commercial Workers Union, Local 653 (the Local). On personal knowledge of his own circumstances, and on investigation and the information and belief of his counsel, Plaintiff avers the following:

**INTRODUCTION**

1.　　The Local is the sole and exclusive bargaining agent for all meat and food market employees employed by Supervalu Cub Foods, Kowalski's Foods, and certain independent grocers (collectively Supervalu and the independent grocers) located in and around the Minneapolis metropolitan area.

2.　　Under prior collective bargaining agreements with Supervalu and the independent grocers, certain Local members had a "30-and-out" pension benefit, which

allowed those Local members to take full retirement pension benefits after completing thirty years of qualifying employment service.

3. During negotiations with Supervalu and the independent grocers in February 2018, the Local agreed to proposed collective bargaining agreement that bargained away the 30-and-out benefit for certain members.

4. The Local presented this proposed collective bargaining agreement to the membership for a vote on its approval and ratification on March 4, 2018. Prior to the vote, the Local intentionally withheld and concealed material details about the loss of the 30-and-out benefit.

5. By withholding material details about the loss of the 30-and-out benefit, the Local prevented its members from asking about this loss or marshaling opposition to the proposed collective bargaining agreement.

6. Had Local members been adequately and meaningfully informed about the bargaining away of the 30-and-out benefit, they could have opposed the loss of the benefit; rejected the proposed collective bargaining agreement; and/or demanded that the Local negotiate additional consideration for the loss of the 30-and-out benefit.

7. By withholding material details about the loss of the 30-and-out benefit, the Local engaged in arbitrary, discriminatory, and bad faith conduct that prejudiced members in jeopardy of losing that benefit.

8. By withholding material details about the loss of the 30-and-out benefit, the Local engaged in conduct that prevented the fair and meaningful exercise of its members' voting rights.

9. Through the vote at the March 4 meeting, the membership approved and ratified the proposed collective bargaining agreement with Supervalu and the independent grocers, resulting in certain members' loss of the 30-and-out benefit.

10. Because the Local withheld material information regarding the 30-and-out benefit, most affected Local members had no reason to know the benefit was at stake, and they did not realize or appreciate that the Local had bargained away their benefit until after the ratification vote.

11. Through its conduct, the Local violated its duty of fair representation toward members that had received the 30-and-out benefit, and it violated its members' democratic labor voting rights under federal law.

12. Plaintiff Matthew Nagel is among those Local members affected by the loss of the 30-and-out benefit. He brings this action individually, and on behalf of all those similarly situated, to seek redress for the Local's wrongful conduct.

## PARTIES

13. Plaintiff Matthew Nagel is a natural person residing in Rosemount, Minnesota. Plaintiff is employed by the Cub Foods on 7435 179th Street West in Lakeville, Minnesota and is a member of the Local.

14. Defendant United Food and Commercial Workers Union, District Local 653 (the Local) is a labor organization with its primary place of business in Brooklyn Center, Minnesota.

## JURISDICTION AND VENUE

15. The Local conducts substantial business in this District, including but not limited to collective bargaining negotiations on behalf of its members, communications with members regarding proposed collective bargaining agreements, and the conduct of membership elections to approve and ratify collective bargaining agreements.

16. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Local resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL ALLEGATIONS

18. The Local is the sole and exclusive bargaining agent for all meat and food market employees employed by Supervalu Cub Foods, Kowalski's Foods, and certain independent grocers (collectively Supervalu and the independent grocers) located in and around the Minneapolis metropolitan area.

19. When the Local negotiates a proposed collective bargaining agreement with an employer, it routinely puts the proposed agreement to a vote for approval and ratification by the relevant membership.

**A.   Maintenance of the 30-and-Out Benefit**

20. Under collective bargaining agreements in force between 2010 and 2018, Supervalu and the independent grocers agreed to maintain an established pension program

for their employees. That pension program is operated through the Minneapolis Retail Meat Cutters and Food Handlers Pension Fund (the Pension Fund).

    a.    These collective bargaining agreements acknowledge "[t]he provisions of [a] thirty (30) year and out pension program for all employees hired before March 1, 2010" to be provided under the terms of the Pension Fund.

    b.    For employees of Supervalu and the independent grocers hired before March 1, 2010, these agreements caused a reasonable expectation of a "30-and-out" pension benefit.

21. According to its operative documents, the Pension Fund provides a 30-year retirement benefit ("30-and-out") to participants that became eligible for pension benefits by May 1, 2010. If participants accrue 30 years of qualifying employment service, then participants can retire and collect full retirement benefits from the Pension Fund.

22. For eligible employees, 30-and-out was a highly valued, important benefit. Because of the physical demands of grocery work, 30-and-out provided some assurance that employees could retire before their health started to deteriorate. The 30-and-out benefit also provided eligible employees with a clear timetable for retirement planning. Without the 30-and-out benefit, some eligible employees face the prospect of years more work to obtain substantially equivalent benefits.

23. As reflected by the terms of past collective bargaining agreements, the Local knew that 30-and-out was a highly valued, important benefit for its qualifying members. The Local also knew or had reason to know that qualifying members were relying on that benefit.

**B.     Concession of the 30-and-Out Benefit**

24.    The Local exchanged collective bargaining proposals with Supervalu and the independent grocers on or around February 1, 2018. In its economic proposal, which the Local posted on its website, it mentions "pension reform" without offering any details about the substance of the reform. Neither side mentions the 30-and-out benefit.

25.    The Local proceeded with collective bargaining negotiations with Supervalu and the independent grocers in February 2018. At some point in those negotiations, the Local agreed to eliminate the 30-and-out benefit for certain qualifying members.

**C.     Ratification Proceedings**

26.    At a meeting of the Local membership on March 4, 2018, the Local presented this proposed collective bargaining agreement for a vote on its approval and ratification. Prior to that meeting, the Local made no public or official announcement notifying Local members about the loss of the 30-and-out benefit.

27.    During the March 4 meeting, the Local circulated a two-page document with "highlights" of the proposed collective bargaining agreement with Supervalu and the independent grocers. That document touted the employers' contributions to the Pension Fund but made no mention of the 30-and-out benefit.

28.    During the March 4 meeting, the Local maintained a table at which members could to talk to representatives about their pension benefits. If directly asked about the 30-and-out benefit, those representatives would discreetly admit that the benefit was bargained away. When members objected to this news, the Local took steps to prevent their objections from becoming public, by moving such discussions into side rooms that were less likely to

draw other members' attention. Through these tactics, the Local downplayed and deflected attention from the loss of the 30-and-out benefit.

29. The Local took no action to publicize or announce the loss of the 30-and-out benefit to affected members. When the proposed collective bargaining agreement came up for a vote, most affected members had no reason to know that their 30-and-out benefit was at stake.

30. In the period leading up to the vote, the Local made a calculated decision to withhold and suppress information about the loss of the 30-and-out benefit, so that affected members would not have a reasonable opportunity to express their concerns or campaign against the proposed collective bargaining agreement.

31. By withholding and suppressing information about the loss of the 30-and-out benefit, the Local denied its members a fair, meaningful opportunity to vote on the merits of the proposed collective bargaining agreement.

32. During the March 4 meeting, the relevant membership voted to approve the proposed collective bargaining agreement with Supervalu and the independent grocers.

**D.    Harms Attributable to Concession and Ratification**

33. In a letter by its president Matthew Utecht on March 16, 2018, the Local acknowledged that "[t]he recently ratified collective bargaining agreements with Supervalu and independent [grocers] included a historic restructuring of our retirement program." The March 16 letter further explained,

> The 30-year service pension will be eliminated effective December 31, 2018. Any member with 30 years of service as of December 31, 2018 becomes a protected group that is not

    affected by this benefit change. \* \* \* Non-protected members can retire from the Legacy Plan at age 62 without incurring a benefit reduction.

34. Had the Local adequately and meaningfully informed Local members about the loss of the 30-and-out benefit prior to the ratification vote, affected members could have challenged the loss of the benefit; marshaled opposition to the proposed collective bargaining agreement; and/or demanded that the Local negotiate additional consideration for the loss of the 30-and-out benefit.

35. Plaintiff was harmed when the Local suppressed and failed to disclose the loss of the 30-and-out benefit prior to the ratification vote. In doing so, the Local prevented Plaintiff and other members from challenging the pension concessions or from demanding additional consideration for those concessions.

36. Plaintiff seeks relief including, but not limited to, consideration for the loss of the 30-and-out benefit; and equitable relief to prevent the Local from holding ratification votes without giving the membership notice of material concessions.

**E.  Plaintiff Matthew Nagel**

37. At all times relevant to this litigation, Plaintiff has been a full-time employee of the Cub Foods on 7435 179th Street West in Lakeville, Minnesota and a member of the Local. Plaintiff is bound by the collective bargaining agreements that the Local negotiates on behalf of its members with Supervalu and the independent grocers.

38. Cub Foods hired Plaintiff in 1989 and, until the ratification of the March 4, 2018 collective bargaining agreement, had been entitled to the 30-and-out benefit. Based on projections from the Pension Fund, Plaintiff will have accrued approximately 29 years

of qualifying service by the end of 2018 toward the 30-and-out benefit. Under the March 4 agreement, Plaintiff will lose his right to early retirement under the 30-and-out benefit.

39. Because the Local intentionally concealed and suppressed information about the loss of the 30-and-out benefit, the Local impeded Plaintiff from campaigning against the lost benefit or demanding additional consideration for the loss.

40. Because the Local intentionally concealed and suppressed information about the loss of the 30-and-out benefit, the vote to ratify the March 4 agreement was unfair, to the prejudice of Plaintiff and others who lost their 30-and-out benefit.

41. Plaintiff is entitled to damages and injunctive relief to redress the harms he suffered as a result of the Local's misconduct.

## CLASS ACTION ALLEGATIONS

42. This action is brought and properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the Class):

> All members of United Food and Commercial Workers Union, Local 653 (the Local) who (1) are bound by a March 4, 2018 collective bargaining agreement between the Local and Supervalu Cub Foods, Kowalski's Foods, and certain additional independent grocers (the Employers); (2) were hired by the Employers on or before March 1, 2010 and became eligible for pension benefits from the Minneapolis Retail Meat Cutters and Food Handlers Pension Fund (the Pension Fund) on or before May 1, 2010; and (3) as of December 31, 2018 will have accrued less than 30 years of qualifying service under the terms of the Pension Fund.

43. The Class shall not include any agents, employees, or representatives of the Local, nor shall it include any immediate family members of the Judge assigned to this case.

44. The Class is so numerous that joinder of individual plaintiffs is not practical. The actual number of Class members is not precisely known but is anticipated to be at least 200. The Local has information that makes it feasible to determine the actual number of Class members.

45. This litigation presents numerous questions of law and fact that are common to both Plaintiff and the Class, and these questions predominate over any questions that may affect individual Class members. These questions include but are not limited to the following:

   a. Whether the Local intentionally withheld or suppressed information regarding its concession of the 30-and-out benefit prior to the March 4, 2018 ratification vote.

   b. Whether the Local promoted a collective bargaining agreement, to the detriment of Class members, without giving them a fair opportunity to object to the concession or demand additional consideration for the loss.

   c. What additional consideration the Local could have negotiated on behalf of affected Local members in exchange for the concession of 30-and-out benefits.

46. Plaintiff's claim is typical of those of Class members in that Plaintiff, like all Class members, was entitled to the 30-and-out benefit until the Local bargained that benefit away. When the Local suppressed information regarding its concession of the 30-and-out

benefit, that misconduct resulted in substantially similar harms to both Plaintiff and Class members.

47. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained experienced counsel with the necessary expertise and resources to prosecute class action litigation. Plaintiff and his counsel do not anticipate circumstances where Plaintiff's interests would be adverse to those of Class members.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. If Class members proceed individually, their claims could result in inconsistent judgments that prejudice the rights of other Class members. And if the Local has limited funds for compensating Class members' claims, class action may be necessary to ensure those funds are equitably distributed between Class members.

49. The Local has acted or refused to act on grounds that apply generally to the Class such that final injunctive relief is appropriate. Such grounds include injunctive relief to prevent the Local from holding ratification votes on collective bargaining agreements without giving members due notice of material concessions.

## FIRST CAUSE OF ACTION
**Breach of the Duty of Fair Representation**

50. Plaintiff incorporates by reference the allegations in the prior paragraphs of this Complaint.

51. In accordance with the National Labor Relations Act and other federal labor laws, labor organizations are subject to a judicially implied duty of fair representation toward their members.

52. The Local breached its duty of fair representation to Plaintiff.

53. The Local engaged in arbitrary, unreasonable conduct by bargaining away the valuable 30-and-out benefit, to the detriment of the Class, without obtaining any further consideration for the Class.

54. The Local engaged in discriminatory conduct by selling out Class members' 30-and-out benefits in order to strengthen its bargaining position on behalf of other Local members. The Local sacrificed the interests of the Class and calculated that, to the extent Class members objected to the concession, their dissent would be stifled by other Local members who found the collective bargaining agreement satisfactory.

55. The Local engaged in bad faith conduct by intentionally concealing and suppressing material information regarding the loss of 30-and-out benefits from the Class and other Local members.

    a. The Local appreciated that, if Class members realized their 30-and-out benefit were in jeopardy, they would challenge the proposed collective bargaining agreement and demand more consideration for the loss of their benefit.

    b. As a result, before the ratification vote on the collective bargaining agreement, the Local intentionally and deceptively withheld news about the loss of the 30-and-out benefit, so it could procure approval and ratification of the agreement before its concession was widely known or publicized.

      c.      By withholding and suppressing information about the loss of the 30-and-out benefit, the Local engaged in bad faith conduct that resulted in prejudice to the Class.

56.      But for the Local's breach of its duty of fair representation, Plaintiff and Class members were denied the opportunity to object to the concession of the 30-and-out benefit; to marshal opposition to the proposed collective bargaining agreement or campaign for votes against that agreement; and/or demand the Local negotiate further consideration for the loss of the 30-and-out benefit.

57.      Plaintiff and the Class demand judgment against the Local for damages in an amount to be determined at trial and any appropriate injunctive relief.

## SECOND CAUSE OF ACTION
### Violation of Title I of the Labor-Management Reporting and Disclosure Act

58.      Plaintiff incorporates by reference the allegations in the prior paragraphs of this Complaint.

59.      Title I of the Labor-Management Reporting and Disclosure Act (LMRDA) grants all members of a labor organization equal rights and privileges to vote in labor elections and to participate in deliberations and voting. 29 U.S.C. § 411(a)(1).

60.      The Local violated Plaintiff's voting rights and privileges under Title I of the LMRDA.

61.      When the Local negotiates a proposed collective bargaining agreement with an employer, it routinely puts the proposed agreement to a vote for approval and ratification by the relevant membership.

62. Prior to and during the meeting on March 4, 2018, the Local engaged in conduct that prevented a fair election on the merits of the proposed collective bargaining agreement with Supervalu and the independent grocers.

63. The Local knew and understood that its concession of the 30-and-out benefit was a material change to the proposed collective bargaining agreement.

64. By intentionally withholding material information regarding the concession of the 30-and-out benefit, and then calling for a vote to approve and ratify the agreement, the Local prevented a fair election. This conduct reduced the voting proceedings to a sham, creating the false impression that members had approved the agreement when they actually lacked fair notice of its material terms.

65. Through its unfair election, the Local procured approval and ratification of the collective bargaining agreement. These proceedings caused harm to Plaintiff and Class members through their loss of the 30-and-out benefit.

66. The Local's conduct of the March 4, 2018 election raises the prospect that, during future elections to approve and ratify collective bargaining agreements, the Local will withhold material details about those agreements from its membership. Such practices effectively deny members' voting rights.

67. Plaintiff and the Class demand judgment against the Local for damages in an amount to be determined at trial and any appropriate injunctive relief.

**PRAYER FOR RELIEF**

Plaintiff Matthew Nagel, individually and on behalf of the Class, prays for relief against the Local as follows:

1. Money damages in an amount to be determined at trial.

2. All damages and relief authorized by statute or law, including but not limited to attorney fees, costs, and disbursements.

3. Class certification under Rule 23 of the Federal Rules of Civil Procedure and appointment of the undersigned counsel as Class Counsel.

4. Injunctive and equitable relief.

5. Any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all claims so triable.

Dated this 19th day of April 2018.

        s/ Scott A. Moriarity
        Shawn J. Wanta, Lic. No. 0389164
        Scott A. Moriarity, Lic. No. 0321977
        BAILLON THOME JOZWIAK & WANTA LLP
        100 South Fifth Street, Suite 1200
        Minneapolis, MN  55402
        612-252-3570
        sjwanta@baillonthome.com
        samoriarity@baillonthome.com

        ATTORNEYS FOR PLAINTIFF