# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| **Matthew Nagel,** individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**United Food and Commercial Workers Union, Local 653,**<br><br>　　　　　　Defendant. | Civ. No. 0:18-cv-1053-WMW-HB<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

By and through the undersigned counsel, Plaintiff Matthew Nagel, individually and on behalf of all others similarly situated, files this class action complaint against defendant United Food and Commercial Workers Union, Local 653 (the Local). On personal knowledge of his own circumstances, and on investigation and the information and belief of his counsel, Plaintiff avers the following:

## INTRODUCTION

1.　　The Local is the sole and exclusive bargaining agent for all meat and food market employees employed by Supervalu Cub Foods and certain independent grocers (collectively the Grocers) located in and around the Minneapolis metropolitan area.

2.　　Under prior collective bargaining agreements with the Grocers, certain Local members had a "30-and-out" pension benefit, which allowed those members to take full retirement pension benefits after completing thirty years of qualifying employment service.

3.      During negotiations with the Grocers in February 2018, the Local unilaterally conceded certain members' 30-and-out benefit. (*See* Ex. A (Decl. of S. Moore, June 24, 2018) at 2.)

4.      The Local presented this proposed collective bargaining agreement to the membership for a vote on its approval and ratification on March 4, 2018. Prior to and during the vote, the Local intentionally withheld and suppressed material information regarding its concession of the 30-and-out benefit.

5.      By withholding material details about the loss of the 30-and-out benefit, the Local prevented its members from learning about this loss or marshaling opposition to the proposed collective bargaining agreement.

6.      Had Local members been adequately and meaningfully informed about the bargaining away of the 30-and-out benefit, they could have opposed the loss of the benefit; rejected the proposed collective bargaining agreement; and/or demanded that the Local negotiate additional consideration for the loss of the 30-and-out benefit.

7.      By withholding material details about the loss of the 30-and-out benefit, the Local engaged in arbitrary, discriminatory, and bad faith conduct that prejudiced members in jeopardy of losing that benefit.

8.      By withholding material details about the loss of the 30-and-out benefit, the Local engaged in conduct that prevented the fair and meaningful exercise of its members' voting rights.

9.      Through the vote at the March 4 meeting, the membership approved and ratified the proposed collective bargaining agreement with the Grocers. As a result, certain members lost their 30-and-out benefit.

10.      Because the Local withheld material information regarding the 30-and-out benefit, most affected Local members had no reason to know the benefit was at stake, and they did not realize or appreciate that the Local had bargained away their benefit until after the ratification vote. Once affected members realized what the Local had done, they took immediate steps to hold the Local accountable for its misconduct.

11.      With its misconduct, the Local violated its duty of fair representation toward members that had received the 30-and-out benefit, and it violated its members' democratic labor voting rights under federal law.

12.      Plaintiff Matthew Nagel is among those Local members affected by the loss of the 30-and-out benefit. He brings this action individually, and on behalf of all those similarly situated, to seek redress for the Local's wrongful conduct.

## PARTIES

13.      Plaintiff Matthew Nagel is a natural person residing in Rosemount, Minnesota. Plaintiff is employed by the Cub Foods on 7435 179th Street West in Lakeville, Minnesota and is a member of the Local.

14.      Defendant United Food and Commercial Workers Union, District Local 653 (the Local) is a labor organization with its primary place of business in Brooklyn Center, Minnesota.

## JURISDICTION AND VENUE

15.     The Local conducts substantial business in this District, including but not limited to collective bargaining negotiations on behalf of its members, communications with members regarding proposed collective bargaining agreements, and the conduct of membership elections to approve and ratify collective bargaining agreements.

16.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Local resides in this District and a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL ALLEGATIONS

18.     The Local is the sole and exclusive bargaining agent for all meat and food market employees employed by SuperValu Cub Foods (Cub Foods stores owned and operated by SuperValu, Inc.); Haug's Cub Foods (Cub Foods store owned and operated by Huag Enterprises); Radermacher's (Cub Foods and Fresh Market stores owned and operated by Radermacher's Save a Lot LLC); King's County Market; Jubilee Foods (in Mound, Minnesota); Oxendale's Market (in Minneapolis, Minnesota); Driskill's Downtown Market; Almsted's Fresh Market; and Festival Foods (collectively the Grocers) all located in and around the Minneapolis metropolitan area.

19.     When the Local negotiates a proposed collective bargaining agreement with an employer, it routinely puts the proposed agreement to a vote for approval and ratification by the relevant membership.

## A.    Maintenance of the 30-and-Out Benefit

20.     Under collective bargaining agreements in force between 2010 and 2018, the Grocers agreed to maintain a pension program for their employees. That pension program is operated by the Minneapolis Retail Meat Cutters and Food Handlers Pension Fund (the Pension Fund).

a.    These collective bargaining agreements acknowledge "[t]he provisions of [a] thirty (30) year and out pension program for all employees hired before March 1, 2010" to be provided under the terms of the Pension Fund.

b.    For employees of the Grocers hired before March 1, 2010, these agreements caused a reasonable expectation of a "30-and-out" pension benefit.

21.     According to its operative documents, the Pension Fund provides a 30-year retirement benefit ("30-and-out") to participants that became eligible for pension benefits by May 1, 2010. If participants accrue 30 years of qualifying employment service, then participants can retire and collect full retirement benefits from the Pension Fund.

22.     For eligible employees, 30-and-out was a highly valued, important benefit. Because of the physical demands of grocery work, 30-and-out provided some assurance that employees could retire before their health started to deteriorate. The 30-and-out benefit also provided eligible employees with a clear timetable for retirement planning. Without the 30-and-out benefit, some eligible employees face the prospect of years more work to obtain substantially equivalent benefits.

23.     As reflected by the terms of past collective bargaining agreements, the Local knew that 30-and-out was a highly valued, important benefit for its qualifying members. The Local also knew or had reason to know that qualifying members were relying on that benefit.

**B.     The Local's Concession of the 30-and-Out Benefit**

24.     The Local exchanged collective bargaining proposals with the Grocers on or shortly before February 1, 2018. In its economic proposal, which the Local posted on its website, the Local mentions "pension reform" but is completely silent about what that reform might be. Neither side mentions the 30-and-out benefit in their proposals.

25.     The Local entered collective bargaining negotiations with the Grocers on February 1. In addition to its officers and other negotiators, the Local invited several of its members to serve on a "SuperValu & Small Employers' Bargaining Committee" (the Bargaining Committee) to be present during the negotiations.

26.     At the outset of collective bargaining negotiations on February 1, the Local unilaterally conceded the 30-and-out benefit for members who had not accrued 30 years of qualifying service by December 31, 2018. (*See* Ex. A at 2.)

27.     By unilaterally conceding the 30-and-out benefit, the Local lost its leverage to demand further concessions from the Grocers in exchange. After conceding the 30-and-out benefit, Local president Matt Utecht privately told one Bargaining Committee member that the Local would demand concessions from the Grocers that might preserve some part of the 30-and-out benefit. There is no indication the Local actually made such a demand or

that it ever intended to extract concessions from the Grocers in exchange for giving up the 30-and-out benefit. (*See id.*)

28.     When the Local was close to an agreement in principle, the proposed deal was put before the Bargaining Committee for a vote of confidence. One member of the Bargaining Committee voted against it. (Ex. A at 3.)

29.     The Local informed its members of an agreement in principle with Supervalu Cub Foods, the largest Grocer, on March 1, 2018. (Ex. B.) The Local reached agreement in principle with the remaining Grocers on March 2, 2018. Consistent with the Local's February 1 concession, the proposed agreement eliminated 30-and-out for members who had not accrued 30 years of qualifying service by December 31, 2018.

**C.    Pre-Vote Communications About the Loss of 30-and-Out Benefit**

30.     Before 2018, it was the Local's regular practice to update members about collective bargaining negotiations and keep them informed about the Grocers' proposals. The Local abandoned this practice in 2018 and demanded that the Bargaining Committee keep proposed terms silent until a collective bargaining agreement was finalized.

31.     During collective bargaining negotiations, a Bargaining Committee member asked Mr. Utecht whether the Local would inform members about the loss of the 30-and-out benefit before a ratification vote, and Mr. Utecht responded that members would be fully informed. (*See* Ex. A at 2-3.)

32.     On or around the point in time that the Local reached agreements in principle with the Grocers, the Local prepared a communique. The Local then directed Bargaining Committee members to use the message in that communique when discussing the proposed

CBA with Local members. The communique falsely stated that the Bargaining Committee had voted unanimously in favor of the CBA. The communique also said nothing about the loss of the 30-and-out benefit.

33.     On or around the point in time that the Local reached agreement in principle with Supervalu Cub Foods, it circulated a flyer to its members. (*See* Ex. B.)

> a.     The flyer announced the Local had "reached a tentative agreement" and falsely added, "Your union bargaining committee recommends the ratification of this tentative agreement."
>
> b.     The only information in the flyer regarding pension benefits was a bullet point that stated, "Groundbreaking Pension Remedy plan first of its kind in the U.S. Grocery Industry." The flyer said nothing about the loss of the 30-and-out benefit.

34.     The Local has claimed that, after reaching agreement in principle with the Grocers, it "provid[ed] personalized contract summaries" for each affected member.[1]

> a.     The summary falsely asserted, "Your Union Bargaining Committee unanimously recommends the ratification of this tentative agreement."
>
> b.     Regarding pension benefits, the summary stated, "We have negotiated a contract that improves wages, maintains Health & Welfare and Pension, PTO, working conditions and workplace rights." The

---

[1]     Plaintiff has yet to determine when these summaries were prepared or how the Local "provided" the summaries to its members.

summary further stated, "Employer committed to additional Variable Annuity Plan pension contributions to be determined by Union and Management Board of Trustees." The summary said nothing further about pension benefits and was silent about the loss of the 35-and-out benefit.

35.     As early as February 1, the Local knew it had unilaterally conceded the 30-and-out benefit and that any ensuing deal with the Grocers would result in the loss of that benefit for those who had not accrued sufficient service time. Before March 4, 2018, the Local did not communicate any information about the concession or loss of the 30-and-out benefit to its affected members.

36.     Prior to March 4, 2018, the Local intentionally concealed the fact that it had conceded the 30-and-out benefit. The Local also concealed the fact that, under the proposed collective bargaining agreement with the Grocers, all members who had accrued less than 30 years' qualifying service by December 31, 2018 would lose their 30-and-out benefit.

37.     The sole reason that the Local concealed information about the concession and loss of the 30-and-out benefit was because the Local feared that, if such information was made public, the relevant membership would reject the proposed collective bargaining agreement.

38.     In this litigation, the Local has conceded that 30-and-out was a highly valued, important benefit. If the Local had taken reasonable steps to disclose information about the concession and loss of the 30-and-out benefit prior to the March 4 ratification vote, the affected membership would have rejected the proposed collective bargaining agreement

9

with the Grocers. By withholding information about the loss and concession of the 30-and-out benefit, the Local subverted the will of its members and intentionally deprived them of a valued and important benefit.

**D.      Ratification Proceedings**

39.      The Local presented its proposed collective bargaining agreements with the Grocers for a ratification vote at a membership meeting on March 4, 2018. The meeting started around 8 a.m. Balloting on the vote started no later than 9 a.m. and closed on or around 4 p.m.

40.      At the outset of the meeting before balloting opened, Union officials met with the Bargaining Committee to discuss the vote. During that meeting, one Bargaining Committee member asked where the Local had disclosed the loss of 30-and-out, and Local director of organizing Rena Wong responded this information was "nowhere." (*See* Ex. A at 4.)

41.      Throughout the March 4 meeting, the Local circulated a two-page document with "highlights" of the proposed collective bargaining agreement with the Grocers. Under the heading "Groundbreaking Pension Remedy through Variable Annuity Plan (VAP) and Secured Legacy Pension Plan," this document touted the Grocers' contributions to pension benefits but was silent about the concession and loss of the 30-and-out benefit. (*See* Ex. C at 1.)

42.      For a six-hour period that substantially overlapped with balloting on the ratification vote, the Local staffed at table at which members could ask about their pension benefits (the pension benefits table). If directly asked about the 30-and-out benefit, those

10

staffers would discreetly admit the benefit was bargained away. When members objected to this news, the Local took steps to prevent their objections from becoming public, and when possible it would move such discussions into side rooms that were less likely to draw other members' attention.

43.    The Local took no action to publicize or announce the loss of the 30-and-out benefit to affected members. At no point during the March 4 meeting did the Local provide members with written documentation that alerted members to the concession or loss of the 30-and-out benefit. None of the written materials on the pension benefits table mentioned the loss of the 30-and-out benefit.

44.    Because the Local concealed and suppressed information about the loss of the 30-and-out benefit, a significant number of members voted on the proposed collective bargaining agreement without knowing that they were giving up that benefit.

45.    Because the Local opened balloting on or around the time that it staffed the pension benefits table, the Local encouraged members to vote on the proposed collective bargaining agreement without giving them any notice that they were giving up the 30-and-out benefit.

46.    Because the Local only disclosed the loss of 30-and-out to those who asked at the pension benefits table, members who did not personally attend the March 4 meeting had no notice the 30-and-out benefit was at stake.

47.    By omitting information about 30-and-out from written communications and by only making this information available by direct verbal inquiry at the pension benefits table, the Local successfully withheld and suppressed information about the loss of the 30-

and-out benefit, so that affected members would not have a reasonable opportunity to express their concerns or campaign against the proposed collective bargaining agreements. By withholding written information about the loss of the 30-and-out benefit, the Local also forced dissenting members to rely on rumor and word-of-mouth, casting further doubts on their message. These tactics were calculated to suppress informed communications about the loss of the 30-and-out benefit.

48.     By withholding and suppressing material information about the loss of the 30-and-out benefit, the Local denied its members a fair, meaningful opportunity to vote on the merits of the proposed collective bargaining agreement.

49.     When ballots were tabulated at the end of the meeting, they showed that the relevant membership had voted to approve the collective bargaining agreements with the Grocers. About 251 members voted in favor of the collective bargaining agreement and about 109 members voted against.

50.     Compared to past ratification votes on collective bargaining agreements with the Grocers, 109 no votes was an unusually high level of opposition.

51.     Later that day, after the ratification vote, Local president Matt Utecht again met with the Bargaining Committee. Because of the high number of no votes, he instructed the Bargaining Committee not to disclose the exact results, and instead suggested they say that the agreement was ratified by a "wide margin." (*See* Ex. A at 5.)

**E.      Harms Caused by Concession and Ratification**

52.      In the days following the ratification vote, as members learned about the loss of the 30-and-out benefit, they started organizing against the Local. One Facebook group, formed to protest the loss of 30-and-out, has gained more than 150 members.

   a.      The Facebook group is large enough that, if its members had been fairly informed about the loss of 30-and-out, they would have changed the outcome of the ratification vote.

   b.      The swift opposition of the Facebook group shows that its members were deeply concerned about 30-and-out benefit, and that the prospect of losing that benefit would have prompted them to campaign against ratification.

53.      The Local knew that the loss of the 30-and-out benefit would cause member unrest. Local officials were afraid that, if members learned about the loss of 30-and-out, they would vote against the proposed collective bargaining agreement with the Grocers. But for this fear of rejection, the Local had no other reason to conceal or withhold the loss of the 30-and-out benefit.

54.      In a letter by Mr. Utecht on March 16, 2018, the Local acknowledged that "[t]he recently ratified collective bargaining agreements with Supervalu and independent [grocers] included a historic restructuring of our retirement program." The March 16 letter further explained,

   The 30-year service pension will be eliminated effective December 31, 2018. Any member with 30 years of service as of December 31, 2018 becomes a protected group that is not

13

> affected by this benefit change. * * * Non-protected members can retire from the Legacy Plan at age 62 without incurring a benefit reduction.

This letter was the Local's first written communication to its members regarding the loss of the 30-and-out benefit.

55.     Had the Local adequately and meaningfully informed Local members about the loss of the 30-and-out benefit prior to the ratification vote, affected members could have challenged the loss of the benefit; marshaled opposition to the proposed collective bargaining agreement; and/or demanded that the Local negotiate additional consideration for the loss of the 30-and-out benefit.

56.     But for its concealment and suppression of information regarding the loss of the 30-and-out benefit, Local members would have voted against the proposed collective bargaining agreement with the Grocers.

57.     Plaintiff was harmed when the Local suppressed and failed to disclose the loss of the 30-and-out benefit prior to the ratification vote. In doing so, the Local prevented Plaintiff and other members from challenging the pension concessions or from demanding additional consideration for those concessions.

58.     Plaintiff seeks relief including, but not limited to, consideration for the loss of the 30-and-out benefit; and equitable relief to prevent the Local from holding ratification votes without giving the membership notice of material concessions.

F.      **Plaintiff Matthew Nagel**

59.      At all times relevant to this litigation, Plaintiff has been a full-time employee of the Cub Foods on 7435 179th Street West in Lakeville, Minnesota and a member of the Local. Plaintiff is bound by the collective bargaining agreements that the Local negotiates on behalf of its members with Supervalu and the independent grocers.

60.      Cub Foods hired Plaintiff in 1989 and, until the ratification of the March 4, 2018 collective bargaining agreement, had been entitled to the 30-and-out benefit. Based on projections from the Pension Fund, Plaintiff will have accrued approximately 29 years of qualifying service by the end of 2018. Under the March 4 agreement, Plaintiff loses his right to early retirement under the 30-and-out benefit.

61.      Because the Local intentionally concealed and suppressed information about loss of the 30-and-out benefit from Plaintiff and other Local members, the Local impeded Plaintiff from campaigning against the lost benefit or demanding additional consideration for the loss.

62.      Because the Local intentionally concealed and suppressed information about loss of the 30-and-out benefit from Plaintiff and other Local members, the Local induced the membership to vote in favor of the collective bargaining agreement with the Grocers.

63.      But for its concealment and suppression of information regarding the loss of the 30-and-out benefit, Local members would have voted against the proposed collective bargaining agreement with the Grocers.

64.     Because the Local intentionally concealed and suppressed information about the loss of the 30-and-out benefit, the vote to ratify the March 4 agreement was unfair, to the prejudice of Plaintiff and others who lost their 30-and-out benefit.

65.     Plaintiff is entitled to damages and injunctive relief to redress the harms he suffered as a result of the Local's misconduct.

## CLASS ACTION ALLEGATIONS

66.     This action is brought and properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the Class):

> All members of United Food and Commercial Workers Union, Local 653 (the Local) who (1) are bound by a March 4, 2018 collective bargaining agreement between the Local and SuperValu Cub Foods (Cub Foods stores owned and operated by SuperValu, Inc.); Haug's Cub Foods (Cub Foods store owned and operated by Huag Enterprises); Radermacher's (Cub Foods and Fresh Market stores owned and operated by Radermacher's Save a Lot LLC); King's County Market; Jubilee Foods (in Mound, Minnesota); Oxendale's Market (in Minneapolis, Minnesota); Driskill's Downtown Market; Almsted's Fresh Market; and Festival Foods (collectively the Grocers); (2) were hired by the Grocers on or before March 1, 2010 and became eligible for pension benefits from the Minneapolis Retail Meat Cutters and Food Handlers Pension Fund (the Pension Fund) on or before May 1, 2010; and (3) as of December 31, 2018 will have accrued less than 30 years of qualifying service toward the 30-and-out benefit under the terms of the Pension Fund.

67.     The Class shall not include any agents, employees, or representatives of the Local, nor shall it include any immediate family members of the Judge assigned to this case.

68.     The Class is so numerous that joinder of individual plaintiffs is not practical. The actual number of Class members is not precisely known but is anticipated to be at least 200. The Local has information that makes it feasible to determine the actual number of Class members.

69.     This litigation presents numerous questions of law and fact that are common to both Plaintiff and the Class, and these questions predominate over any questions that may affect individual Class members. These questions include but are not limited to the following:

     a.     Whether the Local intentionally withheld or suppressed information regarding its concession of the 30-and-out benefit prior to the March 4, 2018 ratification vote.

     b.     Whether the Local promoted a collective bargaining agreement, to the detriment of Class members, without giving them a fair opportunity to object to the concession or demand additional consideration for the loss.

     c.     Whether the Local's withholding or suppression of information about the loss of the 30-and-out benefit caused the membership to vote in favor of a collective bargaining agreement with the Grocers when the membership otherwise would have voted against it.

     d.     What additional consideration the Local could have negotiated on behalf of affected Local members in exchange for the concession of 30-and-out benefits.

70.     Plaintiff's claim is typical of those of Class members in that Plaintiff, like all Class members, was entitled to the 30-and-out benefit until the Local bargained that benefit away. When the Local suppressed information regarding its concession of the 30-and-out benefit, that misconduct resulted in substantially similar harms to both Plaintiff and Class members.

71.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained experienced counsel with the necessary expertise and resources to prosecute class action litigation. Plaintiff and his counsel do not anticipate circumstances where Plaintiff's interests would be adverse to those of Class members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. If Class members proceed individually, their claims could result in inconsistent judgments that prejudice the rights of other Class members. And if the Local has limited funds for compensating Class members' claims, class action may be necessary to ensure those funds are equitably distributed between Class members.

73.     The Local has acted or refused to act on grounds that apply generally to the Class such that final injunctive relief is appropriate. Such grounds include injunctive relief to prevent the Local from holding ratification votes on collective bargaining agreements without giving members due notice of material concessions.

### FIRST CAUSE OF ACTION
### Breach of the Duty of Fair Representation

74.     Plaintiff incorporates by reference the allegations in the prior paragraphs of this Complaint.

75.     In accordance with the National Labor Relations Act and other federal labor laws, labor organizations are subject to a judicially implied duty of fair representation toward their members.

76.     The Local breached its duty of fair representation to Plaintiff.

77.     The Local engaged in arbitrary conduct by unilaterally conceding and bargaining away the valuable 30-and-out benefit, to the detriment of the Class, without obtaining any further consideration for the Class.

78.     The Local engaged in discriminatory conduct by selling out Class members' 30-and-out benefits in order to strengthen its bargaining position on behalf of other Local members. The Local sacrificed the interests of the Class and calculated that, to the extent Class members objected to the concession, their dissent would be stifled by other Local members who found the collective bargaining agreement satisfactory.

79.     The Local engaged in bad faith conduct by intentionally concealing and suppressing material information regarding the loss of 30-and-out benefits from the Class and other Local members.

     a.     The Local appreciated that, if Class members realized their 30-and-out benefit were in jeopardy, they would challenge the proposed collective bargaining agreement and demand more consideration for the loss of their benefit.

     b.     As a result, before the ratification vote on the collective bargaining agreement, the Local intentionally and deceptively withheld news about the loss of the 30-and-out benefit, so it could procure approval

and ratification of the agreement before its concession was widely known or publicized.

c.    In addition, the Local repeatedly misrepresented the position of the Bargaining Committee, by informing its members that the Bargaining Committee unanimously recommended ratification of the proposed agreement when it had not. This misrepresentation misled Local members into believing the proposed agreement was unobjectionable and did not merit scrutiny, further impeding the likelihood members would learn about the loss of the 30-and-out benefit.

d.    By withholding and suppressing information about the loss of the 30-and-out benefit, the Local engaged in bad faith conduct that resulted in prejudice to the Class.

80.    But for the Local's breach of its duty of fair representation, Plaintiff and Class members were denied the opportunity to object to the concession of the 30-and-out benefit; to marshal opposition to the proposed collective bargaining agreement or campaign for votes against that agreement; and/or demand the Local negotiate further consideration for the loss of the 30-and-out benefit.

81.    But for the Local's breach of its duty of fair representation, the membership would have voted against the collective bargaining agreement with the Grocers, thereby compelling the Local to negotiate more favorable pension benefits for the Class.

82.    Plaintiff and the Class demand judgment against the Local for damages in an amount to be determined at trial and any appropriate injunctive relief.

## SECOND CAUSE OF ACTION
### Violation of Title I of the Labor-Management Reporting and Disclosure Act

83.     Plaintiff incorporates by reference the allegations in the prior paragraphs of this Complaint.

84.     Title I of the Labor-Management Reporting and Disclosure Act (LMRDA) grants all members of a labor organization equal rights and privileges to vote in labor elections and to participate in deliberations and voting. 29 U.S.C. § 411(a)(1).

85.     The Local violated Plaintiff's voting rights and privileges under Title I of the LMRDA.

86.     When the Local negotiates a proposed collective bargaining agreement with an employer, it routinely puts the proposed agreement to a vote for approval and ratification by the relevant membership.

87.     Prior to and during the meeting on March 4, 2018, the Local engaged in conduct that prevented a fair election on the merits of the proposed collective bargaining agreement with Supervalu and the independent grocers.

88.     The Local knew and understood that its concession of the 30-and-out benefit was a material change to the proposed collective bargaining agreement.

89.     By intentionally withholding material information regarding the concession of the 30-and-out benefit, and then calling for a vote to approve and ratify the agreement, the Local prevented a fair election. This conduct reduced the voting proceedings to a sham, creating the false impression that members had approved the agreement when they actually lacked fair notice of its material terms.

90.     Through its unfair election, the Local procured approval and ratification of the collective bargaining agreement. These proceedings caused harm to Plaintiff and Class members through their loss of the 30-and-out benefit.

91.     The Local's conduct of the March 4, 2018 election raises the prospect that, during future elections to approve and ratify collective bargaining agreements, the Local will withhold material details about those agreements from its membership. Such practices effectively deny members' voting rights.

92.     Plaintiff and the Class demand judgment against the Local for damages in an amount to be determined at trial and any appropriate injunctive relief.

## **PRAYER FOR RELIEF**

Plaintiff Matthew Nagel, individually and on behalf of the Class, prays for relief against the Local as follows:

1.     Money damages in an amount to be determined at trial.

2.     All damages and relief authorized by statute or law, including but not limited to attorney fees, costs, and disbursements.

3.     Class certification under Rule 23 of the Federal Rules of Civil Procedure and appointment of the undersigned counsel as Class Counsel.

4.     Injunctive and equitable relief.

5.     Any other relief this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all claims so triable.

Dated this 3rd day of July 2018.

s/Scott A. Moriarity
Shawn J. Wanta, Lic. No. 0389164
Scott A. Moriarity, Lic. No. 0321977
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN  55402
612-252-3570
sjwanta@baillonthome.com
samoriarity@baillonthome.com

ATTORNEYS FOR PLAINTIFF