# Exhibit A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Matthew Nagel,**<br>individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**United Food and Commercial Workers Union, Local 653,**<br><br>Defendant. | Civ. No. 18-cv-01053<br><br>**DECLARATION OF SHAWN MOORE** |

I, Shawn Moore, am over eighteen years of age. On my personal knowledge, I declare the following.

1. I work at the Cub Foods in Savage, Minnesota. I am a member of United Food and Commercial Workers Union, Local 653 (the Local), the defendant in this case.

2. Before March 2018, my collective bargaining agreements with my employer provided for a "30-and-out" pension benefit, which allowed me to take full retirement benefits after completing thirty years of qualifying employment service.

3. I was asked to join the Local's "SuperValu & Small Employers' Bargaining Committee" (the Bargaining Committee) for collective bargaining negotiations between the Local and various grocery stores including Supervalu Cub Foods stores (the Grocers) in February 2018. The Bargaining Committee had around 20 members.

4. As a member of the Bargaining Committee, I was present at negotiations between the Local and the Grocers at the DoubleTree Park Place in St. Louis Park on

February 1, 2018, February 7, 2018, February 8, 2018, and February 26, 2018; at the Brooklyn Center Embassy Suites on February 27, 2018; and again at the DoubleTree Park Place on March 1, 2018.

5.  Shortly after the first negotiating session began on February 1, I received documents from Local president Matt Utecht showing the Local was unilaterally conceding the 30-and-out benefit. I believe the Local made this concession on its own and the Grocers had not pressured the Local to give up this benefit.

6.  At the end of the February 1 bargaining session, Local officials instructed us not to reveal anything to other members about concession of the 30-and-out benefit, saying nothing had been decided yet.

7.  At the next negotiating session on February 7, I privately confronted Mr. Utecht about the loss of the 30-and-out benefit.

   a.  Mr. Utecht informed me that the Local might negotiate concessions from the Grocers in exchange for giving up 30-and-out, such as by extending the cut-off date before the 30-and-out benefit terminated. Mr. Utecht told me to stay quiet about this possibility. Since then, neither Mr. Utecht nor other Local officials ever suggested the Local would be pushing for more in exchange for giving up the 30-and-out benefit.

   b.  I asked Mr. Utecht whether members would be informed about the loss of the 30-and-out benefit before voting on a proposed collective

bargaining agreement (CBA). Mr. Utecht assured me that, before the vote, members would be fully informed.

8. Later during the February 7 bargaining session, the Local shared documents confirming its willingness to eliminate the 30-and-out benefit for those who had not earned 30 years' qualifying service by December 31, 2018.

9. Throughout the negotiations, the Local discouraged me and other Bargaining Committee members from discussing the concession of the 30-and-out benefit or any other terms. When another Bargaining Committee member took pictures of proposed collective bargaining agreement (CBA) terms and shared them with members outside the Bargaining Committee, Mr. Utecht and Local secretary-treasurer Paul Crandall confronted the full Bargaining Committee and demanded that all negotiations be kept secret. By comparison, in past collective bargaining negotiations, the Local periodically updated the membership about ongoing negotiations and kept them advised of current proposals.

10. I believe Local officials were afraid that, if members knew that the Local had conceded the 30-and-out benefit, a proposed CBA would not be ratified.

11. When the Local and the Grocers were close to reaching a deal, the proposed CBA was put before the Bargaining Committee for a vote of confidence. I was the sole member of the Bargaining Committee to vote against the proposed CBA.

12. After the Local and the Grocers had reached agreement, the Local drafted a communique, asking Bargaining Committee members use the message in the communique when discussing the proposed CBA with other Local members. The communique stated that the Bargaining Committee had unanimously voted in favor of the proposed CBA. That

was not true because I had voted against it. The communique also said nothing about the Local's concession of the 30-and-out benefit.

13.     The Local presented the proposed CBA to the membership for a ratification vote during a meeting on March 4, 2018.

14.     Early that day, Union officials met with the Bargaining Committee to discuss the upcoming vote.

    a.     I looked at the documents that had been shared with the membership and asked where the Local had disclosed its concession of 30-and-out. Rena Wong, director of organizing for the Local, responded that this information was "nowhere." Mr. Utecht was present and privy to this exchange, and he did not contradict Ms. Wong.

    b.     Union officials told us that, if members had any questions about their pension benefits or the 30-and-out benefit, we should direct them to a pension benefits table where members could ask about their benefits.

15.     The March 4 meeting started around 8 a.m. and the Local started balloting on the ratification vote no later than 9 a.m. The Local made no effort to publicize the loss of the 30-and-out benefit before balloting began or while balloting remained open.

16.     The balloting began around the same time that the pension benefits table was staffed. Unless members inquired at the pension benefits table before voting, there were no other communications from the Local that would put members on notice that their 30-and-out benefit was at stake. I believe a significant number of members voted without being aware they were giving up the 30-and-out benefit.

17. I checked the pension benefits table and noticed that none of the materials there mentioned the loss of the 30-and-out benefit. To the best of my knowledge, the only way the Local would acknowledge loss of the 30-and-out benefit was if a member directly put that question to table staffers.

18. When I discussed the proposed CBA with other members, I told them to vote their conscience, but because of the loss of the 30-and-out benefit I was voting against the proposed CBA.

19. Later in the meeting, the relevant membership voted to ratify the proposed CBA. My best recollection is that 251 members voted yes and 109 members voted no. In my experience, 109 no votes is an unusually high number. I believe that, as more members became aware of the loss of 30-and-out benefits over the course of the day, more members decided to vote against the proposed CBA.

20. I estimate that the total number of members covered by the proposed CBA is several thousand. I further estimate that less than ten percent of those members voted on the proposed CBA.

21. After the ratification vote, Mr. Utecht met with the Bargaining Committee to discuss the recent vote. Mr. Utecht told us that he did not want the membership to know the exact results and suggested we say that the CBA passed by a "wide margin."

[*signature page follows*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 27 day of June, 2018.

SHAWN MOORE