# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Matthew Nagel, individually and on behalf of all others similarly situated, | Case No. 18-cv-1053 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| United Food and Commercial Workers Union, Local 653, | |
| Defendant. | |

This matter is before the Court on Defendant's motion to dismiss Plaintiff's amended complaint. (Dkt. 14.) Plaintiff Matthew Nagel asserts claims against Defendant United Food and Commercial Workers, Local 653 (Local 653), for breach of the duty of fair representation and violation of the Labor-Management Reporting and Disclosure Act (LMRDA). For the reasons addressed below, the Court grants in part and denies in part Local 653's motion to dismiss Count 1 of Nagel's amended complaint and grants Local 653's motion to dismiss Count 2 of Nagel's amended complaint.

## BACKGROUND

This dispute arises from a March 4, 2018 collective bargaining agreement (CBA) negotiated between Local 653 and SuperValu Cub Foods and other independent grocers (collectively, Grocers). Under the March 4, 2018 CBA, a subset of employees of the Grocers lost the opportunity to receive a valued pension benefit plan. Nagel is one of several Local 653 union members who was on track to receive the pension benefit plan at

issue. Local 653 serves as the sole and exclusive bargaining agent for meat and food market employees of the Grocers.

Under the previous collective bargaining agreement, employees of the Grocers with 30 years of qualifying employment were entitled to retire with full pension benefits. Known as the "30-and-out" plan, both parties describe this plan as a "highly valued, important benefit." Nagel alleges that, to the detriment of Nagel and other employees, Local 653 unilaterally conceded the "30-and-out" pension benefit plan while negotiating the March 4, 2018 CBA. After negotiations, Local 653 sent the proposed CBA to a committee that included Local 653 union members for a vote of confidence. The committee approved the proposed CBA without the "30-and-out," with only one vote against it.[1]

Local 653 scheduled the ratification vote on the proposed CBA to take place at the March 4, 2018 membership meeting. Nagel claims that Local 653 failed to provide its members with accurate and complete information pertaining to the proposed CBA. Prior to the ratification vote, Local 653 prepared materials about the proposed CBA. Nagel alleges that none of these informational materials addresses the loss of the "30-and-out" benefit plan. And some of the informational materials falsely state that the committee's vote of confidence in favor of the proposed CBA was unanimous. The gravamen of

---

[1] Nagel alleges that a committee member who was present at the vote of confidence asked Local 653's president whether the union members would be informed of the "30-and-out" plan loss. According to the allegations, the president assured the committee member that the union members would be so informed. Nagel contends that the members were never affirmatively given this relevant information as promised.

Nagel's claim is that, during the period leading up to the ratification vote, Local 653 concealed from its members the loss of the "30-and-out" benefit plan.

Local 653 staffed a table with individuals who were available to answer questions about the proposed agreement during a time period that "substantially overlapped" with the hours that Local 653 conducted the ratification vote. But these individuals *only* answered questions regarding the "30-and-out" plan if union members raised the issue, Nagel alleges. And when doing so, Nagel contends, the individuals ushered union members into a different room to avoid alerting other members about the loss of the "30-and-out" plan. The union members ultimately ratified the CBA.

Nagel commenced this lawsuit on April 19, 2018, and filed his amended complaint on July 3, 2018. The amended complaint asserts that Local 653 breached its duty of fair representation and violated the Labor-Management Reporting and Disclosure Act (LMRDA). Local 653 moves to dismiss the first count of the amended complaint for failure to state a claim for breach of duty of fair representation, and the second count for lack of subject-matter jurisdiction.

## ANALYSIS

Local 653 moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). A complaint must be dismissed, under Rule 12(b)(6), if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). When determining whether the complaint meets this standard, a court accepts as true the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Merely asserting "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 678-79. When deciding a Rule 12(b)(6) motion to dismiss, the district court may consider the complaint, exhibits attached to the complaint, and documents that are necessarily embraced by the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

A complaint must be dismissed if the district court lacks subject-matter jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). When challenging a complaint for lack of subject-matter jurisdiction, a defendant may do so either on its face or on the factual truthfulness of its averments. *See, e.g.*, *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Here, Local 653 raises a facial challenge to jurisdiction.[2] With a facial challenge, the non-moving party "receives the same protections as it would defending against a

---

[2] Local 653 argues that even if Nagel's allegations are true, the Court does not have subject-matter jurisdiction over the LMRDA claim. Because Local 653 is not challenging the factual underpinnings of Nagel's complaint, this is a facial challenge to subject-matter jurisdiction.

4

motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A defendant will prevail on its facial challenge "if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus*, 4 F.3d at 593.

## I. Duty of Fair Representation

Local 653 argues that Nagel fails to state a claim for breach of the duty of fair representation. The National Labor Relations Act imposes a duty on certified unions to fairly represent their members during collective bargaining. *See Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967) (interpreting sections 7 and 8 of the National Labor Relations Act). A union breaches this duty "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. To state a claim for breach of the duty of fair representation, a plaintiff must allege enough facts that, if presumed true, permit the inference that there was both a breach and causation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574, 579 (1981). Nagel alleges that Local 653 breached its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith, which resulted in Nagel's injury. The Court addresses each of these allegations, in turn.

### A. Arbitrary Conduct

Nagel contends that Local 653 unilaterally conceded the "30-and-out" pension benefit plan at the outset of the negotiation and, by doing so, failed to obtain "further consideration" for the concession. Nagel maintains that this bargaining strategy is irrational. Local 653 argues that its negotiation of the CBA was not arbitrary.

5

A union may be deemed to have arbitrarily negotiated a CBA when the final agreement is "so far outside a wide range of reasonableness that it is wholly irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (internal citation omitted) (internal quotation marks omitted). Courts afford substantial deference to a union's negotiation on behalf of its membership because negotiators need wide latitude to effectively perform their bargaining responsibilities. *See id.* The law neither requires— nor expects—all union members to be completely satisfied with a CBA. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). That an agreement proves to be bad in hindsight does not establish arbitrary conduct. *O'Neill*, 499 U.S. at 78.

When determining whether a union acted arbitrarily, courts consider whether the union had a rational basis for its action at the time of the negotiation. *See id.* It is within a union's discretion to negotiate a CBA that results in the loss of benefits for some union members. *See Potter v. Associated Elec. Coop., Inc.*, 56 F.3d 961, 966 (8th Cir. 1995) (affirming district court's holding that an agreement providing severance benefits to only 84 percent of the union's members was not "so far outside a wide range of reasonableness that it was wholly irrational or arbitrary" (internal quotation marks omitted)). But a union acts arbitrarily when it fails to negotiate and sacrifices the grievances of one or some of its members. *See Thompson v. United Transp. Union*, 588 F.3d 568, 573 (8th Cir. 2009) ("Had the union sacrificed the plaintiffs' claims for the collective benefit, its conduct would arguably have been both arbitrary and discriminatory.").

Nagel alleges that Local 653 conceded the "30-and-out" pension benefit plan at the outset of negotiations with the Grocers without receiving "further consideration" for the union members. Aside from this conclusory statement, Nagel does not allege facts that the CBA, as negotiated, is "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *O'Neill*, 499 U.S. at 78 (internal citation omitted) (internal quotation marks omitted). Not all union members received a pension benefit plan under the new CBA that was as favorable as the prior CBA provided. But this fact alone does not establish arbitrary conduct. *See Potter*, 56 F.3d at 966. Nor is the dissatisfaction of union members with the new CBA sufficient to state a claim for breach of the duty of fair representation. *See Ford Motor Co.*, 345 U.S. at 338. And this case arises from collective bargaining *negotiations*, unlike the allegations in *Thompson* that the union completely ignored union members' *grievances*. 588 F.3d at 572-73. As such, although Nagel maintains that the concession of the "30-and-out" plan was unilateral, Nagel fails to allege facts in support of this assertion.

Accordingly, Nagel has not adequately alleged arbitrary conduct by Local 653.[3]

B. **Discriminatory Conduct**

Local 653 argues that Nagel also fails to allege any discriminatory conduct in support of his claim for breach of the duty of fair representation. Nagel alleges that by conceding the "30-and-out" plan, Local 653 strengthened its bargaining position with

---

[3] The Court concludes that Nagel fails to allege arbitrary conduct without any reliance on the pension proposal that Local 653 submitted as an exhibit to its motion to dismiss. In light of this disposition, the Court need not address whether consideration of the pension proposal is proper.

respect to some union members and discriminated against Nagel and other similarly situated union members.

When negotiating a collective bargaining agreement, union representatives have "discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of all the parties represented." *Ford Motor Co.*, 345 U.S. at 337-38. The duty of fair representation requires the union to "serve the interests of all members without hostility or discrimination toward any" when negotiating such agreements. *Thompson*, 588 F.3d at 572 (internal quotation marks omitted). A union breaches the duty of fair representation when it engages in discrimination that is "intentional, severe, and unrelated to legitimate union objectives."[4] *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971).

Differentiating between groups and balancing their respective interests is not, by itself, unlawful discriminatory conduct. *See Ford Motor Co.*, 345 U.S. at 339 ("[A] collective-bargaining representative is within its authority when . . . it agrees to allow union chairmen certain advantages in the retention of their employment, even to the

---

[4] Citing *Beardsly v. Chicago & North Western Transportation Co.*, Nagel maintains that a union has an additional duty to "provide substantive and procedural safeguards for minority members of the collective bargaining unit." 850 F.2d 1255, 1268 (8th Cir. 1988) (internal quotation marks omitted). But *Beardsly* merely contemplates this duty in dicta. *See id.* And the Court's research has produced no case in which the Eighth Circuit has since recognized a union's independent, affirmative duty to provide substantive and procedural safeguards to its minority members. Nor does Nagel provide legal support for the proposition that a union vote taken with incomplete information amounts to a violation of such a duty.

prejudice of veterans otherwise entitled to greater seniority" (citing *Aeronautical Indus. Dist. Lodge 727 v. Campbell*, 337 U.S. 521, 526-29 (1949)). When the union considers the relevant interests of its membership and proceeds with a plan that benefits the union members collectively, the union's actions are not unlawfully discriminatory. *See Danylchuk v. Des Moines Register & Tribune Co.*, 128 F.3d 653, 654 (8th Cir. 1997) (holding that union's decision not to submit a member's case to arbitration did not amount to discrimination even though the decision disfavored that particular member); *Nw. Airlines, Inc. v. Phillips*, 758 F. Supp. 2d 786, 796 (D. Minn. 2010) ("[The union] had to determine a method for distributing Northwest's contributions to pilot retirement and the inadequacy of the contribution meant that any plan would necessarily favor some workers over others. That it did so . . . does not, by itself, show *invidious* discrimination . . . ." (emphasis added) (internal quotation marks omitted)).

Nagel alleges that, by unilaterally conceding the "30-and-out" plan, Local 653 discriminated against union members who might have qualified for this pension benefit plan. Although Nagel alleges that Local 653's chosen bargaining strategy led to an undesirable result for him and other similarly situated union members, this alone does not state a claim for breach of the duty of fair representation. *See Danylchuk*, 128 F.3d at 654. Nagel acknowledges that Local 653 "calculated that, to the extent Class members objected to the concession, their dissent would be stifled by other Local members who found the collective bargaining agreement satisfactory." Local 653's strategic choice is not, by itself, discriminatory. *See id.*

Accordingly, Nagel has not sufficiently alleged that Local 653 engaged in discriminatory conduct.

## C. Bad-Faith Conduct

Local 653 denies acting in bad faith during the period between the negotiation and the ratification of the CBA. Local 653 asserts that it offered union members the opportunity to inquire about the proposed CBA and that union members, including Nagel, did so. But Nagel contends that the opportunities provided by Local 653 were insufficient and that Local 653 actively suppressed information concerning the loss of the "30-and-out" plan.

A plaintiff must prove "fraud, deceitful action, or dishonest conduct" to establish a breach of the duty of fair representation by a union's bad-faith conduct. *Gaston v. Teamsters Local 600, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 614 F.3d 774, 778 (8th Cir. 2010) (internal quotation marks omitted). At the pleading stage, a plaintiff must at least allege "adequate facts . . . to support an inference of bad faith." *Florey v. Air Line Pilots Ass'n, Int'l*, 575 F.2d 673, 676 (8th Cir. 1978). Bad faith is not "[m]ere negligence, poor judgment or ineptitude on the part of the union." *Gaston*, 614 F.3d at 778. A union acts in bad faith when, for example, it deceives members about a known risk of job loss or change to seniority status, or it lies about producing important documents at a hearing. *See Thomas v. Bakery, Confectionery & Tobacco Workers Union Local No. 433*, 826 F.2d 755, 759-61 (8th Cir. 1987).

Local 653 argues that because it staffed a table during the ratification vote of the CBA where its representatives provided truthful answers to union members' questions, Local 653 did not act in bad faith. But allegations in the amended complaint suggest that the informational table was operated in a dishonest manner. Those who staffed the informational table were available only to union members who voted in person and only during a period that "substantially overlapped" with the voting period. In addition, Local 653 allegedly instructed the table staff to stifle dissent by ushering any union member out of the room if that member inquired into the "30-and-out" plan.

Local 653's argument also fails to respond to Nagel's *other* allegations of bad faith. For example, Nagel's amended complaint alleges that prior to the vote, Local 653 did not expressly disclose the loss of the "30-and-out" plan in any written materials so as to avoid negative publicity. In addition, Nagel alleges, Local 653 falsely represented to union members that the bargaining committee had "unanimously" recommended ratification of the proposal, although one committee member voted against the proposal. And Nagel alleges that Local 653's president told a member of the bargaining committee that the union would inform members about the loss of the "30-and-out" plan before a ratification vote. But Local 653's president failed to do so. These facts, if true, plausibly support a finding of deceitful conduct. *See id.*

Accordingly, Nagel has sufficiently alleged facts in support of a breach of the duty of fair representation by bad-faith conduct.

### D. Causation

Local 653 argues that Nagel's complaint must plausibly allege that, but for Local 653's conduct, the union members would have obtained an agreement incorporating the "30-and-out" plan. And Local 653 maintains that the complaint fails to do so. Nagel contests the requirement for such specific allegations of causation and maintains instead that it is sufficient under the pleading standard to allege that, but for Local 653's conduct, the union members would not have lost their full retirement benefits and would have received a more favorable outcome, regardless of whether that outcome included the "30-and-out" plan.

To satisfy the pleading requirement for causation, a plaintiff must allege facts supporting an inference that "but for the union's conduct the employee would not have been injured." *See Anderson*, 641 F.2d at 580 n.8. Such allegations of causation must be more than "mere speculation." *Id.* at 580. For example, as the *Anderson* court held, it is mere speculation to allege that an employer would have agreed to a provision for severance pay, when the employer had repeatedly "resisted the severance pay provision as written, had refused to establish a security fund, and was only a few months from filing for bankruptcy." *Id.* But absent substantial hurdles, such as repeated resistance or financial impossibility, it is not mere speculation to allege that a more favorable negotiation could have been reached. *See, e.g.*, *Thomas*, 826 F.2d at 760 (rejecting district court's conclusion that further negotiation would have been futile, reasoning that a compromise could have been reached that would have benefitted an assortment of

employees). If further negotiation would not have been futile, the *extent* of the negotiation's effectiveness pertains to the remedy, not causation. *Id.*

Local 653 argues that in order to satisfy the pleading standard for causation, Nagel must allege that but for Local 653's concealment of the loss of the "30-and-out" plan:

> (1) the membership would *not* have ratified the proposed agreement, (2) the employers would have then agreed to return to bargaining rather than unilaterally eliminating the 30-and-out benefit or locking the employees out of their jobs, (3) the employers would have then agreed to continue to provide and fund the 30-and-out pension benefit notwithstanding their earlier agreement to eliminate it as part of the pension rehabilitation plan, (4) the union members would have then ratified a contract that continued providing the 30-and-out benefit regardless of any *other* concessions necessary to retain the 30-and-out benefit through continued bargaining, (5) the pension plan trustees would have continued to allow a 30-and-out pension benefit under the terms of the pension Trust Agreement, and (6) Nagel would have remained in continued employment under the CBA long enough to become vested in the 30-and-out benefit.

But Local 653's pleading example is well beyond what is required to survive a Rule 12(b)(6) motion to dismiss. Even Local 653 admits that its proposed standard is impossible for a plaintiff to satisfy, explaining that "it will always and forever be pure conjecture to claim that the Union membership . . . would have agreed to preserve the 30-and-out benefit if the Union had provided more or different information to its members." Yet, Eighth Circuit precedent does not mandate an *impossible* pleading standard, and Nagel need not articulate the precise contours of hypothetical future negotiations. *See Thomas*, 826 F.2d at 760.

Nagel's amended complaint alleges that Local 653 suppressed information about the loss of the "30-and-out" plan and the union members would not have ratified the

13

proposed CBA had Local 653 publicly distributed this information. Upon learning of the loss of the "30-and-out" plan, dissatisfied members promptly organized a Facebook group consisting of approximately 150 members, Nagel contends. Unlike *Anderson*, in which an employer had repeatedly rejected the severance provision, the Grocers here had provided the "30-and-out" plan to its union members in previous contracts. *See* 641 F.2d at 580. The facts alleged here, as in *Thomas*, suggest that subsequent negotiations plausibly could have led to a more favorable compromise for the union members. *See Thomas*, 826 F.2d at 760. Whether subsequent negotiations would have resulted in the retention of the "30-and-out" plan or adoption of a different plan speaks to the *extent* of the union members' injuries. As such, that consideration pertains to the question of remedy, not causation.

In summary, because Nagel sufficiently alleges that Local 653 breached its duty by bad-faith conduct and, but for this breach, Nagel would not have been injured as he was, the Court denies Local 653's motion to dismiss Count 1 of the amended complaint.

## II. Labor-Management Reporting and Disclosure Act (LMRDA)

Local 653 challenges whether this Court has subject-matter jurisdiction over Count 2 of Nagel's amended complaint. Local 653 contends that the LMRDA only protects against discrimination and Nagel has not alleged discrimination as it relates to this cause of action. Nagel counters that Local 653 deprived union members of the right to a *meaningful* vote, which Nagel maintains is actionable under the LMRDA.

District courts have subject-matter jurisdiction over LMRDA claims when a plaintiff's rights, as secured by the LMRDA, have been violated. 29 U.S.C. § 412. The LMRDA states, in relevant part,

> [e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). This provision is "a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon v. Harvey*, 379 U.S. 134, 139 (1964); *see also Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 548 (1984) (holding that Section 411 "only protects union members against the discriminatory application of union rules"). In *Calhoon*, the denial of the plaintiffs' candidacy "was not a discrimination against their right to nominate, since the same qualifications were required equally of *all* members." 379 U.S. at 139 (emphasis added). Absent an LMRDA violation, the Supreme Court held, the district court lacked subject-matter jurisdiction over the LMRDA claim. *Id.*

Despite the Supreme Court's holding that the LMRDA only protects against discrimination, some circuit courts of appeals maintain that the LMRDA also secures a right to a "meaningful" vote. *See Fulk v. United Transp. Union*, 81 F.3d 733, 736 (7th Cir. 1996) (acknowledging the Circuit split). The Eighth Circuit, however, is not among those circuits. In *Marshall v. Local Union No. 6, Brewers & Maltsters & General Labor*

*Departments*, the Eighth Circuit determined that a union did not violate the LMRDA because "there was no discrimination on th[e] vote, as no [members] were excluded from voting, nor does the record demonstrate that any member of the class was deprived of his or her right to cast a meaningful vote." 960 F.2d 1360, 1370 (8th Cir. 1992). Although the court referenced a meaningful vote, the inquiry was whether *any* member was denied a meaningful vote. *Id.* This decision implies that a union would violate the LMRDA if *some* members—but not others—were denied a right to cast a meaningful vote. *Marshall* does not support the proposition advanced here by Nagel that, absent discrimination, deprivation of a meaningful vote confers subject-matter jurisdiction over an LMRDA claim. Accordingly, the Court applies *Calhoon* and concludes that the LMRDA only protects against discrimination. 379 U.S. at 139.

Local 653 argues that the Court lacks subject-matter jurisdiction over Nagel's LMRDA claim because Nagel has not alleged any discrimination. Indeed, the amended complaint does not allege that Local 653 treated members differently when distributing information, establishing voting procedures, or conducting the ratification vote. Because the LMRDA "only protects union members against the discriminatory application of union rules" and Nagel has not alleged such discrimination, the LMRDA does not provide the means by which the wrongs alleged here can be addressed. *Crowley*, 467 U.S. at 548.

Because the Court lacks subject-matter jurisdiction over Count 2 of Nagel's amended complaint, Local 653's motion to dismiss Count 2 is granted.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Local 653's motion to dismiss, (Dkt. 14), is **GRANTED IN PART** and **DENIED IN PART** as to Count 1, to the extent described herein, and **GRANTED** as to Count 2.


Dated:  March 4, 2019                                         s/Wilhelmina M. Wright
                                                              Wilhelmina M. Wright
                                                              United States District Judge